and N.J.H. We have for the appellant, Paul Rossette. Correct. Thank you. And for the appellant, David Robinson. Yes, Your Honor. You may proceed. Good morning, Your Honors. May it please the Court. My name is Paul Rossette. I am an Assistant Attorney General for the State of Illinois, and I represent the Department of Children and Family Services. These are consolidated interlocutory appeals, 13 of them, taken by the Department from the juvenile court's orders requiring that the Department obtain drug tests of foster parents for illegal drug use within 24 hours of placing minors with the foster parents, or as soon as possible after the 24 hours if the 24 hours is not practicable. This matter first arose in December 2013 when the juvenile court, in an unrelated case, observed a foster parent in court acting in a way that suggested that she might be under the influence of illegal drugs. The court requested that that foster parent take a drug test. It was not an order. It was a request. The foster parent voluntarily did so and did test positive for both marijuana and amphetamines. So the Department removed the minors from that foster parent's placement. But then, starting shortly thereafter, the juvenile court started requiring in every case where the Department placed minors with foster parents that the Department obtain a drug test within 24 hours of placement of the minors, regardless of any observation of drug use, any indication to believe that the foster parents use drugs, any allegation or evidence of drug use. So we've appealed in a group of cases to show the court that in each one of these cases a separate order was entered with identical language that requires this drug testing. It is going on in other cases, but we didn't want to appeal in 100 cases. We appealed in a group big enough to demonstrate to the court that it is going on in every case where we place minors with foster parents as opposed to, say, a residential treatment facility or something like that. So the Department is complying with the orders pending this court's review of the propriety of them, although it did file motions to vacate, which none of the other parties filed written responses to but did orally oppose at the hearing on the motions to vacate, and the juvenile court did deny all the motions to vacate in these cases. It's our position that the juvenile court lacked authority to impose this requirement that the Department test all foster parents for illegal drug use within 24 hours of placement of the minors with them. Because we've complied with the orders, the appeals are technically moot. However, it's our position that an exception to mootness applies, capable of repetition but evading a review exception, and that exception has two prongs. The first is if the challenge to action was of a duration too short to get a power review, and that's the case here where the judge expects us to do the test within 24 hours of placement of the minors, so there's no way that we could appeal and get a decision from the court before we would have to comply with the order. The other prong is that there's a reasonable expectation that that would happen again, that the court would require us to perform drug tests going on in the future, and that is the case because the court has been requiring it in each case, plus she entered a standing order in February of 2014 that requires that in all juvenile court cases, the Department test the foster parents within 24 hours of placement. This is a case of first impression. There's no published decision in this state or anywhere in the country that we could find where a juvenile court had required that foster parents be tested for illegal drug use, and the state's attorney has not provided any such case in his brief either. In fact, we're unable to find any Illinois published decision where a juvenile court ever ordered a foster parent to do or not do anything, and that makes sense because foster parents are not parties to abuse and neglect proceedings, except in some narrow situations where they intervene, which is not the case here. But in an attempt to get around this lack of jurisdiction that the juvenile court admitted that she had over the foster parents because they're not parties, she's ordered the Department to get the foster parents to take the drug tests rather than ordering the foster parents directly to take the drug tests, and the only logical inference from that order is that they refuse to take it, that we can't place the children with them. Does the order say that? It does not. It does not. But if it's an empty exercise, or if it's just a suggestion, then we would not do it. But that is the suggestion, that if the parents refuse to take it or if they test positive, that we can't place the children with them. In addition to not having what? If they tested positive, you probably wouldn't place the children with them. You know, it would depend on the circumstances, what the drug was, how often it was used. If someone uses marijuana once a year, perhaps, and was otherwise an excellent foster parent, we might leave the child. If it's a steady heroin user, obviously less likely. But we object to even having to do the tests in the first place Just because this one foster parent on one occasion appeared in court under the influence, it's a huge leap to assume that that's a widespread problem among foster parents, and that every foster parent, many of whom are grandmothers and great-grandmothers, that are stepping in to help in these dysfunctional families, should have to go and give an observed urine test of a probation officer, just so that they could help out with the situation. Mr. Rousset, I'll ask the same question to Mr. Robinson, and it's his turn, but I want to make sure that I understand how the parties view the trial court's order. Do you view the order as requiring DCFS to drug test the foster parents? That is the order, and that's what you believe the mandated action is, as contemplated by the trial court? Right, we have to obtain a drug test, we don't have to do it ourselves, but we have to arrange and pay for it, which is what we are doing. We have a contract with the probation office where we pay them to test the parents, and then we have to present the results to the juvenile court judge. And I only ask that because the wording of the court's order is pertinent, and the court is responsible for providing the drug drop. It might be interpreted in different ways, just voluntarily having available drug testing kits. For instance, for purposes of the appeal, your reading of the order, the interpretation made by DCFS is that DCFS, by this order, is responsible for testing the foster parents. Correct. I think that's also the understanding of the juvenile court judge, and at least most of the parties that appear on a daily basis in Danvon Juvenile Court. So in addition to not having any personal jurisdiction over the foster parents who are not parties, just as a residential treatment center would not be a party if the department placed a child there, there also is a lack of statutory authority under the Juvenile Court Act for the juvenile court to issue this order. In the area of placement decisions, there's broad discretion granted to DCFS, and the juvenile court is not allowed to make orders requiring specific placements, specific services, or specific service providers. What it can do is once DCFS places a child in a particular foster home with evidence, it's presented to the court that that situation is not in the child's best interests. The juvenile court can't order that the child be removed from that particular home, but it can't dictate either the original home that the child is placed in or the subsequent one. Once the child is removed at the court's order, if it sees fit, DCFS then would choose the second placement. I really don't see how remarkably that the court has ordered the foster parents to do anything. I mean, what would be the court's recourse if a foster parent says, I'm not taking the next? I think that the only logical inference is that DCFS could not then use that person as a foster parent. But does the order say that? It does not. And how is that related to the order regarding placement? Because otherwise it would be an empty exercise. I mean, if there's no purpose in having the drug test, then why are we doing it? Well, so that DCFS would be aware of whether or not the person they're considering placing this child with uses drugs. Well, they would be aware if there was evidence. If they used that, we'd make the earlier determination as to... Right. I mean, that's a policy matter. We could adopt a policy requiring that, but we don't believe it's necessary. Perhaps at some point in the future the department will, but right now there's no statute, regulation, or policy that requires that. And we think it's such an unusual occurrence that a foster parent would use drugs that we think it's an overreaction to test all of them simply because of one occasion. And I'm just curious. I really don't think it's accurate to say that the court is entering an order for a specific placement. I think it's accurate to say that the court is entering an order as the foster parent is entering an order against DCFS. I don't think that they're directing a specific placement, but they're restricting our ability to place where we see fit because I think that that is the only logical and natural interpretation is that if the parent won't take the test or if they fail it, that the judge doesn't want them placed there. The judge may not want that, but the order doesn't restrict DCFS in that manner, correct? It doesn't expressly. And you yourself just said that you may or may not remove the child depending on the circumstances of the individual case in terms of the drug usage. But the judge can order it. But we have another case which I tried to consolidate with this case where we did have a person fail for smoking marijuana once a year. We did not remove the child, and the judge has held the director and the guardianship administrator in contempt because she said common sense dictates that if the person fails the drug test, that we must remove the child immediately, even though no statute says that in the standing order and the identical separate order that's issued in every case does not say what shall occur if the person refuses to take the test or if they test positive. But the judge is constrained as she's requiring this, and this is what she wants. And of course, all of that, which is very interesting, is not part of the record in this case. Correct. But it is in another case that's currently pending in front of this court. The court would have the authority to remove the child. Correct. If there's credible evidence that there's habitual drug use going on that's making the parents unfit, the law is clear that the court can remove them. But what this is, we think, is just sufficient expedition because she's just saying let's find out if any of these people use drugs, even though there's no reason, not even an allegation, much less any evidence that any of these people are using drugs. In addition to the juvenile court act not authorizing this, there are also some immunity issues because the state has to pay for these tests, so the court is requiring us to expend state dollars to do this. Plus, it's controlling the policies of the state. It's the department's discretionary decision whether to require these drug tests, what criteria to use in selecting foster parents. And by requiring this, the judge is stripping us of this discretion. Well, how do you reconcile your position in this case regarding sovereign immunity with Ingray, Vaughn's, Henry, and the OPCS that would work to pay for inpatient drug treatment services? How is this different? Well, it's different because there was a statutory mandate that we provide those services, so that's a mandamus action, and it's just incidental. There is no statute or regulation that requires the foster parent drug tests. So the judge isn't ordering us to comply with the law. She's instead imposing her own view about what the best way to vet foster parents is. Unless court has any further questions, I'll save the remaining time to rebuttal. Thank you. We will have rebuttal, counsel.  Thank you, Your Honor. Thank you. Please, the court. Counsel. I had a fancy introduction prepared for today, but I think I'm going to jettison it because I was struck by something today, and it wasn't what was said necessarily as much as it's what's gone unsaid in this case. And that's what DCFS didn't mention here today and what it hasn't mentioned in any of the numerous filings in this series of cases. That's anything about the best interest of the children. We've heard a lot about the hardships that DCFS faces in these cases. Not a single thing about the best interest of the children. I'm going to quote from page 3 that I just pulled from their reply brief. It states, quote, The State's Attorney throughout appears unaware of the difficult circumstances faced by the Department, case workers, and management, such as severely dysfunctional families, incarcerated parents, and minors with behavioral and medical issues, all against the backdrop of limited resources and personnel. But in any event, there is no evidence in these records that the Department failed to meet its obligation to the children of the State. No evidence. There lies the disconnect. The criticisms leveled at the Department by the Juvenile Court and the State's Attorney are unjustified and the drug test orders were not based on any action or inaction by the Department. That's incorrect. The argument made by DCFS in this case presupposes that there's only two parties to this case, namely the children in each case and the trial judge. There's three. It's DCFS, the trial judge, and the children in each individual case. They're leaving themselves out of the equation when they say there's no evidence. There surely is evidence. The December 2013 incident that counsel brings up is a perfect example. The court is fully within its power to consider that and within its discretion to consider those types of events. I'll talk about that when we get further afield with respect to the arguments that I'm going to present today. You're talking about missed interests here, though. Is there any concern that this order isn't case-specific, that it's not fact-specific to the individual cases? It's just a blanket order? That goes to your question, Justice Harris. The answer is, from my perspective, unequivocally no. What the court has entered in this case that DCFS describes as a blanket order and, in fact, changed their terminology in the reply brief to blanket rule, is a professional courtesy, one that, as trial judges, members of this panel, I'm sure impose from time to time at the trial level, which was, counsel, we have got serious problems here, and we've got children that need to be looked after, and that is paramount. Moving forward, here's what we're going to do in my courtroom. I'm going to be entering a drug drop in each individual case, and what I mean by that is I'm going to order you to provide a drug drop for these folks. And, again, that goes to your question. My interpretation of that, and we may have a disagreement about this, and I believe the GAL, defense counsel, and the assistant state's attorneys in this case view it this way. It's a general order that says, to the effect of general rule, look, when you come in here, this is important. I've had enough of this stuff, the game playing and so on. I want you to come in here. I'm going to enter a specific order in each case. But let's presume, for the sake of argument, that there is a specific general order, a floating order. Our argument in this case would be, so what? It doesn't matter. There were specific orders entered in each of these cases. And as I'll demonstrate later, there's certainly sufficient evidence to support those in each of these underlying cases. Well, when you say specific orders, to be fair, it's the same order, different caption, but the same wording without specific factual findings in each group. That's correct. Nothing is contained in the record in any of these consolidated cases that the orders entered in each of these cases because of a particular concern regarding the facts in these specific cases. Respectfully, Your Honor, I adamantly disagree with that. That's their position, Your Honor? There is specific information. The caseworkers, and I'll go through a list later on to include this specific incident from December 2013. There's no rule in the Juvenile Court Act that says the court has to rely on the evidence that's presented at a particularized hearing. That's part of what this court concluded in re-enactment. There's no hearing that's required where we have to present evidence. The trial court can certainly take judicial notice of things that happen in her courtroom every single day. These children are wards of the court. The judge is duty-bound to protect these children. And if the trial judge believes that this simple exercise would better protect the children, she has the right and obligation to do that under the Juvenile Court Act. And that's our position, Your Honor. Mr. Robinson, I understand there are other appeals pending, correct, Your Honor, for this court from the same courtroom that these arise from, so I don't want to prejudice anyone's rights in those cases. But the question that I asked Mr. Rousset was, how are the parties viewing the language of the trial court's order here? Are they viewing it as mandating DCFS provide and actually conduct drug testing of this false appearance? And I believe Mr. Rousset indicated that's how DCFS is interpreting the order. Is that how you're interpreting it? I interpret the order, and the State's Attorney interprets the order precisely as the law requires us to interpret the order, Your Honor, which is we follow exactly what the order says. They provide a drug drop. And one of the examples that I provided in our Apple eBrief was the example of the will to show cause. And I think that's part of the reason why DCFS didn't really challenge this initially. And that's because if they had, they would have had to come before the court and say, Judge, we don't want to comply with this. And the judge would have said, okay, well, then you're in contempt. The judge would not have held the foster parents in contempt. And how do I know that? Because the order says nothing about the parents, and I would be the first one to argue, at least anecdotally, that the trial court would be wrong if she did hold the foster parents in contempt for failure to provide a drug drop, because the order says DCFS must provide it. That is, provide the financial support required to provide the actual cut, right? Yeah, put aside what foster parents have to do or not, what they don't have to do in here, in terms of the order itself, I mean, do you interpret it to mean DCFS, in this case, you were to provide drug test results to this foster parent, or DCFS, you're going to provide the foster parents an opportunity to do a drug test without any responsibility for providing test results to the trial? The latter, Your Honor. It's an opportunity provision. That's the way I read it. Is that the way you approach it in the brief? It is, but it's more nuanced than that, in part because this case is very simple and straightforward. The question is, can the trial court order a drug drop? Can they order DCFS to provide a drug drop? And I absolutely understand the court's concern in this regard about the interpretation, and the state would concede that it could be interpreted in another fashion, but the state would not concede that that is the interpretation of the court. And that begs the question, Your Honor, about why the court did what it did. As in a criminal case where we're not required to prove motive, it often doesn't hurt. In this case, I think a lot of what went on in the briefing in this case goes to the trial court's motive, and that is trying to get a handle on what the GAL, defense counsel, the assistants in this county have to deal with, as well as the trial judge, trying to protect these children. And this, as DCFS describes it, intemperance on the part of the trial court, manifests itself on appeal. Counsel brought up MSPS. Without getting into the merits of that case at all, there's no question, but I think counsel can stipulate to this point, there's no question, and in fact I think he said it, that the parent in that case tested positive for illegal drugs, and DCFS did not timely remove the child from that care. Page 19 of their brief to this court, their initial brief to this court, includes what I think up north they would call a bit of a misrepresentation. South of I-80, I think we just call it the runaround. But the trial court in this case described that as game playing. Here's what they said on appeal to this court. Quote, if credible evidence that a relative foster parent or licensed foster parent is using illegal drugs ever were to come to the attention of the department, it would undoubtedly remove the minors from the placement itself without waiting for a court order. The department would never knowingly leave minors in the care of illegal drug users. That's not what counsel said in DCFS's brief or represented to this court today. In fact, if my notes are correct, counsel represented that DCFS would indeed consider removing a child if they tested positive for drugs. And it's this type of moving off the goal post that forced the trial court's hand in this case, and the court decided at some point, look, these kids deserve better. We've got to do something. They're words of the court. And while that doesn't go directly to your concern, Justice Harris, which I agree is an important one, it does establish sort of a backdrop for why we're here. And the reason I think that's important is because we don't know precisely how the trial court interprets that language because they didn't ask. They didn't say, Judge, what does this mean? Instead, they said, this is an injunction, and we're going to take it to the court, and they'll tell you what the law is. I don't need to ask you, Judge. And so that's why we're here. And I know that that's terse and pointed, but I think in this case the niceties can be set aside because we're dealing with these children. Counsel, it seems to me that this type of blanket order requires a court to exercise discretion. And without knowing the facts of each individual case, how can a court exercise discretion because it's blanket and each case is being treated the same? That's an excellent question, Justice Carter, because it's one that I grappled with for the first several days when I reviewed this case. And I had one of those sort of research epiphanies, particularly, and I do appreciate the court's indulgence in permitting the state's attorney to supplement the record with In Re, NM. There was a bit of a filing snafu with the clerk's office, and Clerk Bender did a great job in getting that out so we could get it in here. And in reading that case, something dawned on me. And it's one of the things I stated earlier, Your Honor. There are really sort of three fundamental parties to a hearing, or to a case. One is the child in these types of cases, and of course you have the trial judge. But DCFS is there, too. And DCFS's position appears to be that what we do doesn't matter. All that matters is what evidence is presented about the kid, okay? Here, the trial court had all the evidence it needed related to DCFS's actions in this case. So I would say there was plenty of evidence. The specific incident from December 2013, and again, there are more. I am presenting what's on the record in this case. This is found in record pages 22 through 27. The lack of evidence from DCFS that it trains caseworkers as to the effects of drugs, that was brought up by the trial court, not challenged by DCFS. Three, caseworker turnover. The trial court referenced two cases from earlier in the day where there was so much turnover that my recollection from the record is that literally the caseworker didn't even know who the child was that they were going to testify about. That's the evidence in these cases. And so that brings me to a point I wanted to make, and it's brought up in paragraph 4 of DCFS's response to the state's motion to supplement, where we laid out a brief argument about how that case, in fact, supports our argument. This was DCFS's response in paragraph 4. Quote, accordingly, in NM, the Juvenile Court Act authorized the juvenile court to issue the type of orders issued, but limitations on the circumstances when they could be issued. Here, neither the Juvenile Court Act nor any other statute authorizes the juvenile court to issue the foster parent drug test orders with or without limitation. Essentially what their argument is, is that if the juvenile court doesn't say the court can order it, the court can't order it. I adamantly disagree with that point, and so does the Supreme Court. If a trial judge determines that it's in the best interest of a child for DCFS to attempt to procure a rocket ship and fly to the moon because it's in the best interest of the children, and there's evidence that supports that, DCFS is duty-bound to endeavor to do it. And if they can't, and they can't afford it, or NASA won't assist them, then they can come to the trial court and say, Judge, this is why we can't procure a rocket ship. We understand why the court wants to do it, but we don't. And I use that extreme example because we're not procuring rocket ships. We're providing $20 cups of urine through a process that's already in place. And there's no question, and this is the important part, there's no question that DCFS concedes that the trial court has the authority to do it, the judge ordered it because the judge saw the person was high on drugs in the courtroom with DCFS personnel. And so the court ordered it, and no one challenged it. Why? Because everyone knows the judge has authority to order it. So a lot of what's going on here is sort of the same sort of misdirection that the trial court's been dealing with that drove the court to do what it did in this case. I respect DCFS. I know they have budgetary concerns. I'm the 4th District Deputy Director at the Appellate Prosecutor. I know about budgetary concerns. I appreciate their plight. Budgetary concerns are not mentioned in the Juvenile Court Act. The best interest of the child is mentioned repeatedly, and it's something that's left out of their analysis. From that perspective, Your Honors, respectfully, the state stands on its brief. What I'd like to talk a little bit about is INRI-NM. And I know that this court is well aware of that case. This is the exact same panel. And I think it demonstrates the point that I just made about how DCFS has this argument turned on its head. Again, if you look at that paragraph 4, essentially what they argue is the court can't act unless the Juvenile Court Act tells them they can. They can't make an order. In fact, in INRI-NM, reading it closely, the trial court's order in that case was only improper because it ran afoul of the section. That is, there was a section of the Juvenile Court Act, 1-17, that said, If the court finds that it is in the best interest of the minor that an employee or employees of the department appear in addition to the private agency, which was the issue in that case, I know this court is well aware of, or employee of a private agency, the court shall set forth the reasons in writing. If that provision wasn't in there, DCFS would have lost this case. That's my firm belief, reading it in context. Again, DCFS has this argument turned on its head. Indeed, the trial court can order anything not prohibited by statute or the Constitution. And I know it's much to DCFS's chagrin, but part of the reason I presented the separation of powers argument in the Appley brief was because that goes to that constitutional standard. I didn't actually believe it was questionable that the court had the statutory authority to enter this drug trial. No one's questioned one in the past. Essentially, what he's doing is arguing that there's some sort of overarching problem with that. And that's not the point. As we lay out in our brief, there is no constitutional problem here. The court's ordering drug drops to ensure that DCFS is aware, when it's not doing its job, that there could be a potential problem. So if someone says, no, I'm not taking it, at least that's some indication to DCFS. Wait a second. As they admit in their brief, maybe they are on drugs. And if they have some genuinely held religious or constitutional belief that they shouldn't have to be watched urinating in a cup, well, then they can bring that to the trial judge and say, judge, here's the person, and here's all the reasons we think they're a good foster parent. And we would like to place the child with them. They don't want to take the drug test, and here's why. Of course, a reasonable trial judge would say, of course, you can place that child with that person. And my order in that regard will be superseded by my order today, which is that you don't have to provide one from them. And I see that my time is concluding, but I think this boils down to basically a two-part test from NN. One is, was there an individual order in each case here? Clearly, there was an individual order. But two, is there some rational basis, that is, some evidence to enter it? And we've talked about that already. But what's important here, as sort of a collateral matter, is DCFS has essentially affirmatively acquiesced or waived any challenge to the discretionary clause. I see that my time has expired. May I conclude my remarks? MR. LIEBERMANN Essentially, DCFS has conceded that this is not an abuse of discretion standard. In fact, in their reply brief, they come back and criticize the state's attorney for making their arguments. We're capable of making our arguments. It's not an abuse of discretion standard. This is an overarching order. It's de novo review. So I would leave the court with that, except to say we affirm that the state's attorney believes these kids deserve better. MR. LIEBERMANN Thank you, Your Honors. It's a little bit disturbing that he would talk about changes of position and misdirection, because the argument he gave today is different from what's in his brief. We had argued in our opening brief that the judge is doing this in every case, that it's a blanket rule, and it's done regardless of any evidence or even allegation of drug use by these particular foster parents that are involved in these appeals. In his brief, he said that's not true. There's no blanket rule. The judge has only done it in particular cases where there is evidence that drug use is involved. So in response to that, even though I didn't think that I would need to do that because all the parties know that this is what is going on, I attached to my reply brief the standing order, which tracks the language in these separate drug drop orders and makes clear that it says in all juvenile cases this must be done. So what does he do? He moves to strike that, saying that the court can't take judicial notice of a court order. The court granted that. I don't know why. It didn't give its reason. But we do ask that you reconsider that at this point because it's clearly a standing order, and standing orders are not issued under specific numbers because they apply to entire groups of cases. So there's no reason to question its legitimacy. He seems to be suggesting that it was fabricated, or he calls it purported. He says that it can't be verified. Well, he could just check with the clerk's office of the juvenile court or with the judge herself or with any of these attorneys that practice that every day. Everyone down there knows that there's a standing order. Everybody knows that the judge is requiring this in every case. Regarding NM, that was my case, not his case. I'm very aware of that. In NM, there was an issue of statutory construction. The juvenile court act specifically allowed the court to require DCFS to attend court hearings in addition to the private social service case workers, but only after a finding that was in the best interest of the child. So the problem in that case was that the court entered a blanket rule instead of complying with the statute. That's not the case here. There is no statute that says that the juvenile court can order foster parent drug tests. Also, there was not an order in the December 2013 case. The court order, the drug drug order says that the court asked the woman to do it, and she voluntarily took the test. So there was no order to appeal, and there was no indication that DCFS knew that that foster parent used drugs prior to the day that she showed up in court under the influence, and we did remove the children promptly. So much of what he says is what he accuses us of, which is misdirection. They went out of their way to try to get this court to not reach the merits. We disagreed on everything. He said, this is a 301, not a 307. We should have taken contempt. Everything, there is no blanket rule. Everything to try to get this court not to decide whether the blanket rule is justified. Thank you. Thanks to both of you. The case is submitted, and the court stands in recess until after lunch.